UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

STEPHANIE ANNE WHITED,

    Plaintiff,

v.                                               Case No. 6:16-cv-00629-Orl-37TBS

COMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____

## ORDER

In this social security appeal, U.S. Magistrate Judge Thomas B. Smith recommends that the Court affirm the Commissioner's decision granting Plaintiff a partially favorable decision on her claim for disability benefits. (Doc. 18.) Plaintiff objects to the Report and Recommendation. (Doc. 19.) For the reasons set forth below, the decision of the Commissioner is due to be affirmed, and the Report and Recommendation is due to be adopted.

### I. PROCEDURAL HISTORY

On March 15, 2012, Plaintiff filed an application for social security disability benefits, alleging an onset date of February 29, 2012. (Doc. 9-5, pp. 5–17.) The Commissioner initially denied Plaintiff's claim on August 9, 2012, and then upon reconsideration on December 18, 2012. (Doc. 9-4, pp. 5–16.) Plaintiff requested and received a hearing before an administrative law judge ("**ALJ**"). (*Id.* at 20–22, 38; Doc. 9-2, pp. 31–63.) On August 22, 2014, the ALJ issued a partially favorable decision finding that

Plaintiff was disabled from February 29, 2012 through October 3, 2013 ("**Disability Period**"), but that her disability ceased as of October 4, 2013, when medical improvement occurred. (Doc. 9-2, pp. 10–26.) After the administrative Appeals Council denied Plaintiff's request for review of the decision (Doc. 9-2, pp. 2–4), Plaintiff appealed to this Court. (Doc. 1.) On February 8, 2017, U.S. Magistrate Judge Thomas B. Smith issued a Report recommending that the Court affirm the decision of the Commissioner. (Doc. 18 ("**R&R**").) Plaintiff objects. (Doc. 19 ("**Objection**").) The matter is now ripe for the Court's consideration.

## II.　STANDARD OF REVIEW

### A.　Report and Recommendations

When a party objects to a magistrate judge's findings, the district court must "make a de novo determination of those portions of the report . . . to which objection is made." 28 U.S.C. § 636(b)(1). The district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." *Id.* The district court must consider the record and factual issues based on the record independent of the magistrate judge's report. *Ernest S. ex rel. Jeffrey S. v. State Bd. of Educ.*, 896 F.2d 507, 513 (11th Cir. 1990).

### B.　Social Security Appeals

In social security appeals, a reviewing court "must determine whether the Commissioner's decision is supported by substantial evidence and based on proper legal standards." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). "Substantial evidence is more than a scintilla and is such relevant evidence as a

reasonable person would accept as adequate to support a conclusion." *Id.* In conducting such review, a court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner. *Id.* "Even if the evidence preponderates against the Commissioner's findings, [the reviewing court] must affirm if the decision is supported by substantial evidence." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004) (quoting *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

### III. DISCUSSION

In this appeal, Plaintiff does not challenge the favorable decision regarding her disability and right to receive benefits. She only challenges the ALJ's finding that her disability ceased on October 3, 2013. (*See* Doc. 14, p. 1.) Specifically, Plaintiff contends that the ALJ erred by: (1) finding that she experienced medical improvement in her condition as of October 4, 2013; and (2) applying the incorrect legal standards to her testimony. (*Id.* at 10–14, 18–20.) The Court will address each of these arguments in turn.

#### A. Medical Improvement

At the administrative level, an ALJ applies a five-step, sequential evaluation process to determine whether a claimant is disabled. *Winschel*, 631 F.3d at 1178. In particular, the ALJ must evaluate:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a residual functional capacity ("**RFC**") assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can

perform given the claimant's RFC, age, education, and work experience.

*Id.*

If the ALJ determines that the claimant is disabled, the ALJ must also determine if the claimant's disability continued through the date of the decision, or whether medical improvement has occurred. 20 C.F.R. § 416.994. Medical improvement is defined as "any decrease in the medical severity of [the claimant's] impairment(s) which was present at the time of the most recent favorable medical decision that [the claimant was] disabled or continued to be disabled." 20 C.F.R. § 404.1594(b)(1). To determine whether medical improvement has occurred, federal regulations require the ALJ to assess the following:

(1) whether the claimant is engaging in substantial gainful activity;

(2) whether the claimant has an impairment or combination of impairments that meets or equals the severity of one of the applicable listed impairments;

(3) whether medical improvement has occurred;

(4) if improvement occurred, whether it relates to the ability to work;

(5) if there was no medical improvement, whether any of the exceptions set forth in subparagraphs (d) or (e) of 20 C.F.R. § 404.1594 apply;

(6) if medical improvement is shown to be related to the claimant's ability to work or if one of the exceptions apply, whether the claimant has a severe impairment;

(7) whether the claimant can perform past relevant work; and

(8) if the claimant cannot perform past relevant work, whether the claimant can perform other work.

20 C.F.R. § 404.1594(f)(1)–(8)).

A determination that medical improvement has occurred must be based on a comparison of: (1) prior medical evidence supporting a finding that the claimant was previously entitled to benefits and (2) current medical evidence. *Vaughn v. Heckler*, 727 F.2d 1040, 1043 (11th Cir. 1984); 20 C.F.R. § 404.1594(c)(1). "Without such a comparison, no adequate finding of improvement c[an] be rendered." *Vaughn*, 727 F.2d at 1043.

Here, the ALJ followed the five-step sequential inquiry in determining whether Plaintiff was disabled. First, the ALJ found that Plaintiff had not engaged in substantial gainful activity since February 29, 2012.  (Doc. 9-2, p. 17.) Second, the ALJ determined during the Disability Period, Plaintiff suffered from severe impairments—specifically, a "history of aortic valve disease and residuals of two cerebral vascular accidents . . . with accompanying weakness." (*Id.*) The ALJ then determined that Plaintiff's impairments, whether alone or combined, did not meet or medically equate to the severity of the specified impairments in the Listing of Impairments. (*Id.* at 18.)

In assessing whether Plaintiff could perform past relevant work, the ALJ considered, *inter alia*, all of Plaintiff's "symptoms and the extent to which [her] symptoms [could] reasonably be accepted as consistent with the objective medical evidence and other evidence." (*Id.*)

Plaintiff testified, among other things, that she suffered two strokes and had "residual symptoms . . . , including cognitive impairment, memory impairment, weakness, poor coordination, and need to change positions throughout the day." (*Id.* at 19.) The ALJ found that the Plaintiff's "medically determinable impairments could reasonably be expected to produce her alleged symptoms, and that the [Plaintiff']s

statements concerning the intensity, persistence and limiting effects of these symptoms [were] generally credible from February 29, 2012 through October 3, 2013." (*Id.*)

Objective medical evidence confirmed that Plaintiff had two separate strokes, ongoing treatment, physical therapy, and multiple hospitalizations from February through June of 2012. (*Id.* at 19.) Dr. Alvan Barber, who conducted an examination of Plaintiff in December 2012, opined that Plaintiff's symptoms included right upper and lower extremity weakness, difficulty walking, difficulty with speech, difficulty writing due to right hand weakness, slow processing, and difficulty with short term memory. (*Id.* at 20.) Dr. Barber further opined that Plaintiff could not walk, stand, squat, or sit for long periods of time, and she could not switch between sitting and standing without difficulty. (*Id.*)

Based on this evidence, the ALJ concluded that during the Disability Period, Plaintiff did not have the RFC to perform sedentary work or past relevant work. (*Id.* at 20–21.) Considering Plaintiff's age, education, work experience, and RFC, the ALJ also found that there were no jobs that existed in significant numbers in the national economy that Plaintiff could have performed during the Disability Period and therefore, deemed Plaintiff disabled throughout this time. (*Id.* at 21–22.) He determined, however, that "[m]edical improvement occurred as of October 4, 2013," and that Plaintiff could now perform sedentary work with limitations. (*Id.* at 22–23.)

In arriving at this conclusion, the ALJ conducted the eight step medical improvement analysis and compared past medical evidence that supported a disability finding with current medical evidence. According to the ALJ, objective medical evidence

showed that Plaintiff had not developed any new impairments since October 4, 2013, and that her impairments were the same as those from the Disability Period. (*Id.* at 22.) Additionally, the ALJ found that beginning October 4, 2013, Plaintiff did not have an impairment or combination of impairments that met or medically equaled an impairment specified in the Listing of Impairments (*Id.*) The ALJ further concluded that Plaintiff's medical improvement was related to her ability to work because there was an increase in her RFC. (*Id.* at 22–23.) Although Plaintiff was unable to perform her past relevant work, a vocational expert testified, and the ALJ found, that Plaintiff could perform other work based on the Medical-Vocational Guidelines (*Id.* at 25.) Accordingly, the ALJ determined that Plaintiff had the capacity to perform sedentary work, with additional limitations, and that she was no longer disabled as of October 4, 2013. (*Id.* at 26.)

Plaintiff argues the ALJ's finding is not supported by substantial evidence because Plaintiff presented to Dr. Olubukunola Thomas on October 3, 2013, and he documented abnormalities on Plaintiff's neurological examination. (Doc. 14, p. 12.) Moreover, Plaintiff reported "experiencing a loss of memory, general weakness, aches/pains, severe headaches, leg or arm weakness, balance problems, speech problems, lethargy, shortness of breath, and a low exercise tolerance." (*Id.*) Plaintiff further argues that the ALJ should have granted her request for a consultative neurological evaluation based on the lack of updated medical evidence in her file. (*Id.* at 12–13.)

Plaintiff's arguments lack merit. As noted by the Magistrate Judge, "the applicable standard is a showing of medical improvement of Plaintiff's condition; there is no requirement that Plaintiff be cured of all symptoms. The continued existence of some

abnormalities is not *ipso facto* inconsistent with overall medical improvement." (Doc. 18, p. 8.)

Here, the ALJ considered all of Plaintiff's symptoms and the extent to which those symptoms could reasonably be accepted as consistent with the objective medical evidence. (Doc. 9-2, p. 23.) Notably, the ALJ did not totally reject the Plaintiff's subjective complaints. (*Id.*) Instead, he considered all record evidence, including Plaintiff's testimony, and found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms [were] not entirely credible." (*Id.*)

The ALJ observed that Plaintiff "did not require any additional hospitalizations." (*Id.*). Moreover, when Plaintiff presented to Dr. Thomas for an examination on October 3, 2013, Dr. Thomas identified no weakness aside from some neurological abnormalities. (*Id.*) Plaintiff confirmed during her March 2014 visit that she had not had any additional chest pains or palpitations since her last hospitalization and she had not incurred any additional hospitalizations. (*Id.*) Throughout her office visits in 2014, Dr. Thomas repeatedly described Plaintiff's condition as "better" and her medications as "helpful." (*Id.* at 23–24.) Plaintiff again denied having any chest pains with activities but reported some shortness of breath when she lies down at night. (*Id.* at 24.)

In addition to admitting that she no longer had chest pains or palpitations, Plaintiff reported that she engages small chores and activities. In particular, Plaintiff stated that she: (1) is able to do small chores for thirty minutes at a time; (2) does some housework including dusting and vacuuming; and (3) occasionally goes to the movies with her daughter and out to eat with her fiancé. (*Id.* at 24.) It was based upon this cumulative

evidence that the ALJ determined that Plaintiff was capable of performing sedentary work.

There is no evidence that the ALJ ignored evidence or erred in determining that Plaintiff's condition had improved. Likewise, the Court sees no error in the ALJ's decision not to obtain a consultative examination. Although an ALJ has a duty to develop a fair and full record, *Graham v. Apfel*, 129 F.3d 1420, 1422–23 (11th Cir.1997), in fulfilling that duty, an ALJ "is not required to order a consultative examination unless the record establishes that such an examination is necessary to enable the [ALJ] to render a decision," *Holladay v. Bowen*, 848 F.2d 1206, 1210 (11th Cir. 1988). Here, there is no indication that a consultative examination was necessary to assist the ALJ in rendering a decision. Simply put, substantial evidence supports the ALJ's finding that medical improvement occurred as of October 4, 2014. Accordingly, the Court will not disturb such findings.

B. **Plaintiff's Credibility**

A claimant may seek to establish that he has a disability through his own testimony regarding pain or other subjective symptoms. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (per curiam).

> In such a case, the claimant must show: (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

*Id*.

Where an ALJ decides not to credit a claimant's testimony about pain or limitations, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. *Jones v. Dep't of Health and Human Servs.*, 941 F.2d 1529, 1532 (11th Cir. 1991) (stating that articulated reasons must be based on substantial evidence). A reviewing court will not disturb a clearly articulated credibility finding that is supported by record evidence. *Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995).

As explained above, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms [were] not entirely credible." (Doc. 9-2, p. 23.) After discussing the medical evidence, the ALJ elaborated on her credibility, noting that Plaintiff's credibility was undermined by her "mediocre" work history and the fact that she required little treatment and no hospitalizations during the period in question. (*Id.* at 24).

The ALJ observed that many of Plaintiff's symptoms and complaints were not fully supported by medical evidence and overstated to the extent that she claimed to be wholly disabled. For instance, Plaintiff reported occasional depression and stress, but there was no indication that she has had any severe, ongoing depression or anxiety or required any treatment other than prescription medication (Paxil). Plaintiff also reported memory lapse; however, there was no evidence confirming significantly delayed cognitive abilities. (*Id.*). Indeed, Plaintiff's speech was very intelligible at the hearing, which stood in stark contrast "to what her condition was at the time of the consultative

examining physician's report, which suggested the need for a speech evaluation." (*Id.*) Furthermore, the ALJ noted that Plaintiff's participation in several activities and small chores was "inconsistent with [her alleged] total inability to work." (*Id.*).

Plaintiff argues that her mediocre work history should not have impacted the ALJ's credibility determination for the period following October 3, 2013, because her work history did not negatively affect the ALJ's credibility or disability findings for the Disability Period. (Doc. 19, pp. 19–20.) Plaintiff further argues that the ALJ overlooked the fact that Plaintiff did not have any medical insurance or money to obtain treatment. (*Id.* at 20.)

These arguments are also without merit as they ignore the fact that a claimant's credibility must be assessed in view of the record as a whole. In determining whether Plaintiff's condition had improved as of October 4, 2014, the ALJ was required to consider all of the evidence, including more recent treatment records, which in this case, "confirm[ed] that the claimant ha[d] significantly improved related to her ability to work." (Doc. 9-2, p. 20.) It was equally acceptable for the ALJ to rely on record evidence for other factors weighing against Plaintiff's credibility, including her meager work history, because "[a] lack of work history may indicate a lack of motivation to work rather than a lack of ability." *Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001).

Finally, there is no indication that the ALJ "overlooked" Plaintiff's lack of medical insurance or money to obtain treatment. Though the record indicates Plaintiff's financial inability to afford medications or treatment in 2012 (Doc. 9-9, p. 23), there is no evidence that Plaintiff's lack of treatment or hospitalizations in 2013 was due to a lack of financial

ability or the lack of medical insurance. An ALJ is not required to simply assume that a claimant's scarce record of medical treatment or hospitalizations is due to a lack of insurance or finances, especially where, as here, the claimant previously sought treatment and hospitalization on multiple occasions despite her alleged financial hardship. Moreover, the record strongly supports the inference that the lack of significant treatment or hospitalization was due to an improvement in Plaintiff's condition.

The Court, therefore, concludes that the ALJ's findings with respect to Plaintiff's credibility are supported by substantial evidence. Accordingly, the Court will not disturb the ALJ's findings on this point.

## Conclusion

Having conducted an independent, de novo review of the portions of the record to which Plaintiff objected, the Court agrees with the findings and conclusions set forth in the R&R. Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Plaintiff's Objection to Report and Recommendation dated February 22, 2017 (Doc. 19) is **OVERRULED**.

2. U.S. Magistrate Judge Thomas B. Smith's Report and Recommendation (Doc. 18) is **ADOPTED, CONFIRMED,** and made a part of this Order.

3. The decision of the Commissioner is **AFFIRMED**.

4. The Clerk is **DIRECTED** to—

    a. Enter judgment in favor of Defendant Commissioner of Social Security and against Plaintiff Stephanie Whited; and

    b. Close the file.

**DONE AND ORDERED** in Chambers in Orlando, Florida, on April 10, 2017.

ROY B. DALTON JR.
United States District Judge

Copies to:
Counsel of Record